# In the United States Court of Federal Claims

No. 13-995C

(Filed: January 12, 2015)

```
*************************************
                                      )   Claim under the Equal Pay Act, 29 U.S.C.
MARLENE JORDAN,                       )   § 206(d); motion to dismiss pursuant to
                                      )   RCFC 12(c) and 12(h)(2)(B); sufficiency
              Plaintiff,              )   of factual allegations for purposes of
                                      )   RCFC 8; motion to compel discovery
       v.                             )   responses
                                      )
UNITED STATES,                        )
                                      )
              Defendant.              )
                                      )
*************************************
```

Judith A. Lonnquist, Seattle, Washington, for plaintiff.

Joshua A. Mandlebaum, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Joyce R. Branda, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Joann M. Putnam, Attorney, Office of Regional Counsel, United States Department of Transportation, Renton, Washington.

**OPINION AND ORDER**

LETTOW, Judge.

This action was brought on December 16, 2013, by plaintiff, Marlene Jordan, under the Equal Pay Act, 29 U.S.C. § 206(d), alleging gender-based discrimination in pay. Ms. Jordan is employed by the Department of Transportation, Federal Aviation Administration ("FAA"), as a Management and Program Analyst in Renton, Washington. Compl. ¶¶ 3, 4, ECF No. 1. The government answered the complaint on February 14, 2014, averring that "[a]ny difference between plaintiff's salary and that of any comparable male employees is not due to plaintiff's sex, but is based upon a seniority system, a merit system, a system that measures earnings by quantity or quality of production, or a factor or factors other than sex." Answer ¶ 15, ECF No. 5.

For a number of months, the parties undertook discovery in accord with a scheduling order issued on April 4, 2014, ECF No. 7, and a protective order issued on May 20, 2014, ECF No. 10. The discovery was conducted in parallel with proceedings in a related case that had been filed three days after the instant action, *Jordan v. Foxx*, No. 2:13-cv-02280-RSM (W.D. Wash.

filed Dec. 19, 2013).[1]  In the district court case, Ms. Jordan invoked the Civil Rights Act of 1964, Title VII, as amended by the Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, § 11, 86 Stat. 111, the Civil Rights Act of 1991, Pub. L. No. 102-166, § 114, 105 Stat. 1079, and the Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 5(c)(2), 123 Stat. 7 (codified at 42 U.S.C. § 2000e-16), to seek relief from discrimination and retaliation based on sex (female) and race (African-American).[2]

Notwithstanding these trial-preparatory proceedings, the government on August 28, 2014, filed a motion to dismiss pursuant to Rules 12(c) and 12(h)(2)(B) of the Rules of the Court of Federal Claims ("RCFC"), contending that Ms. Jordan's complaint fails to allege sufficient facts under RCFC 8 to state a viable claim for relief, but instead merely sets out a formulaic recitation of the elements of an Equal Pay Act claim.  Def.'s Mot. to Dismiss ("Def.'s Mot.") at 2, ECF No. 15.  Ms. Jordan has opposed this motion and has cross-moved for leave to amend her complaint, to compel production of documents, and for sanctions under RCFC 37.  *See* Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, Cross-Mot. for Leave to Am. Compl., and Cross-Mot. to Compel Production of Documents, and for Sanctions under Rule 37 ("Pl.'s Cross-Mots."), ECF No. 16.  After briefing and a hearing, the motion and cross-motions are ready for disposition.  For the reasons stated, the court denies the motion to dismiss, nonetheless grants plaintiff leave to file an amended complaint, and denies plaintiff's cross-motions to compel production of documents and for sanctions.

## BACKGROUND

Ms. Jordan is employed in "the FV-343-H Series, H-band pay grade" at the FAA's Service Center, Administrative Service Group, in Renton.  Compl. ¶ 4.  She alleges in her complaint that one named male co-worker earned $20,679 more per year than she did as of February 2012, and that four additionally named male employees occupying positions as H-band Management and Program Analysts also earned a higher salary than she did.  Compl. ¶ 5.  She coupled these allegations with the claim that she and the five named male co-workers "perform equal work on jobs requiring equal skill, effort, and responsibility, and the jobs are performed

---

[1] In 2012 and 2013, Ms. Jordan filed complaints with the FAA's Office of Civil Rights alleging discrimination based on race and sex and retaliation based on prior EEO activity.  Compl. in *Jordan v. Foxx*, ¶¶ 17, 18.  In due course, those allegations were presented to the Equal Employment Opportunity Commission, which accepted the complaints for hearing by an administrative law judge, but no such hearings were held.  *Id*.  In reliance on 42 U.S.C. § 2000e-5, Ms. Jordan subsequently filed her complaint in *Jordan v. Foxx*, which remains pending before the District Court for the Western District of Washington.  Trial in that case is scheduled to commence on July 6, 2015.

[2] Parallel discovery was and is appropriate because "[a] discrimination claim for unequal pay under Title VII . . . is generally analyzed under the same standards as [apply under] the E[qual ]P[ay ]A[ct], with the exception that intentional discrimination is required under Title VII."  *Hughes v. Xerox Corp.*, No. 12-cv-6406, 2014 WL 3955263, at *10 (W.D.N.Y. Aug. 13, 2014) (citing *Tomka v. Sieler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).

under similar working conditions." Compl. ¶ 6. Ms. Jordan avers that "[t]he differential rate of pay was not part of or occasioned by a seniority system, merit system[,] a system based on quantity or quality of production, or upon a legitimate 'factor other than sex.'" *Id*.

Prior to filing its motion to dismiss, on August 18, 2014, the government supplied detailed responses to plaintiff's first interrogatories, providing names of ten male employees who had or had held positions as Management and Program Analysts, Series 343, Grade H, at any time from December 2010 to the present. *See* Pl.'s Cross-Mots., Attach. Decl. of Katherine Cameron (Sept. 8, 2014), Ex. B (Def.'s Resp. to Pl.'s . . . First Three Interrogs.), at 2, ECF No. 16-1. The government's responses also described in reasonably comprehensive terms the operation of the FAA's core compensation system, which uses "pay bands" or ranges of pay, adjusted through consideration of a number of factors, to set a particular employee's salary. *Id*. at 3-6.

## ANALYSIS

### A. *The Government's Motion to Dismiss*

RCFC 12(h)(2) allows the defense of "[f]ailure to state a claim upon which relief can be granted" to be raised by a motion under RCFC 12(c). RCFC 12(h)(2)(B); *see TigerSwan, Inc. v. United States*, 110 Fed. Cl. 336, 339 n.1 (2013). Notably, the government did not in its answer assert the defense of failure to state a claim upon which relief can be granted. *See* Answer at 3 (stating three affirmative defenses, none of which consisted of the contention that plaintiff's complaint failed to state a viable claim). As a consequence, the government was barred from moving for dismissal pursuant to RCFC 12(b)(6). *See* RCFC 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). RCFC 12(h)(2)(B) nonetheless preserves the government's ability to assert the defense via a motion for judgment on the pleadings pursuant to RCFC 12(c), after it files its answer.

The legal bases for a motion under RCFC 12(c) are the same as those for a motion to dismiss pursuant to RCFC 12(b)(6). *See Xianli Zhang v. United States*, 640 F.3d 1358, 1364 (Fed. Cir. 2011); *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009). A motion to dismiss under RCFC 12(b)(6) or 12(c) will be granted if the facts alleged in the complaint do not entitle the plaintiff to a legal remedy. *See Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

In this instance, the government challenges the sufficiency of plaintiff's pleading of details underlying her claim. In accord with RCFC 8, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). Rule 8 does not require "detailed factual allegations," but does demand more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations in a complaint need to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating the allegations, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Bussie v. United States*, 96 Fed. Cl. 89, 95 (2011), *aff'd*, 443 Fed. Appx. 542 (Fed. Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570). Unlike factual allegations, however, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Once the court excises any conclusory or formulaic components of a plaintiff's complaint, the court can determine whether the remaining factual allegations in the complaint "plausibly suggest an entitlement to relief." *Id*. at 681. In determining whether a plaintiff has pled adequate facts such that the court may infer that her entitlement to relief is plausible, the court must "draw on its judicial experience and common sense." *Id*. at 679.

In the government's view, "[t]he complaint offers no factual support for the assertion that the identified males, or other male colleagues of Ms. Jordan, perform equal work on jobs requiring equal skill, effort[,] and responsibility, under similar working conditions." Def.'s Mot. at 2. The government equates the allegations in the complaint to "a formulaic recitation of the elements of a cause of action." *Id*. (quoting *Twombly*, 550 U.S. at 555, and citing *Hughes v. Xerox Corp.*, 2014 WL 3955263, and *Wade v. Morton Bldgs., Inc.*, No. 09-1255, 2010 WL 378508, at *6 (C.D. Ill. Jan. 27, 2010)).

Ms. Jordan emphasizes that the legal ground for her claim, the Equal Pay Act, 29 U.S.C. § 206(d), prohibits discrimination in pay based on sex for performing equal work. She contends that her complaint lays out a plausible claim for violation of this criterion by factually describing the comparable males' position, duties, and pay. Pl.'s Cross-Mots. at 8. The complaint lists "by name five of her male co-workers at her work site who are paid higher salaries than Ms. Jordan for performing work in the same position, pay grade, and, therefore, job description and responsibilities." *Id*. (emphasis omitted). She avers that these details provide ample notice to the government of the nature of her claim and readily distinguish her case from others in which such details were omitted. She points out that the court in *Wade v. Morton Buildings* determined that the complaint's allegations of violation of the Equal Pay Act "fail[ed] to give fair notice because they g[a]ve [d]efendant no hint of the identity of the comparable male employee or his position. Defendant [wa]s left to guess which male employee plaintiff believe[d] was paid more for equal work." Pl.'s Cross-Mot. at 8 (quoting *Wade*, 2010 WL 378508, at *6). She notes that the court in *Wade* considered that in an action under the Equal Pay Act, "[w]ithout some description of the comparable male's position and duties, as compared to [p]laintiff's duties, no inference of plausibility arises to support her conclusion that the work was equal," although a plaintiff "does not necessarily need to identify specific names and salaries." *Id*. (quoting *Wade*, 2010 WL 378508, at *6).

Ms. Jordan similarly resists the government's invocation of *Hughes v. Xerox Corp.* on the ground that the factual allegations in her complaint are more detailed than those at issue in that case. *Hughes* also was a case brought under the Equal Pay Act, and the relevant factual allegation stated that "[s]ince about 2006, [p]laintiff was paid less than similarly-situated males for equal work on jobs that required equal skill, effort, and responsibility." *Hughes*, 2014 WL 3955263, at *10. The court found this allegation insufficient under Fed. R. Civ. P. 8 because the complaint neither identified the allegedly similarly situated males by position nor offered supporting facts for the allegation that the female plaintiff was paid less. *Id*.

In its reply, the government acknowledges that plaintiff and the five male employees named in Ms. Jordan's complaint have the same job titles, pay band, and place of work, but it objects that "[t]itles do not fill the gap in the complaint because actual duties, rather than titles, control an Equal Pay Act analysis." Def.'s Reply at 2, ECF No. 20. In support, the government cites *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 695 (7th Cir. 2006) ("We look to the actual job duties performed by each employee, not to his or her job description or title."); *Beck-Wilson v. Principi*, 441 F.3d 353, 362 (6th Cir. 2006) ("In determining whether a comparator is appropriate for the purposes of an E[qual ]P[ay ]A[ct] claim, our focus is on actual job requirements and duties, rather than job classification or titles."); and *Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 492 (8th Cir. 2003) ("Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job."). *Id.* The government additionally relies on a regulation adopted by the EEOC that job content is controlling for purposes of the Equal Pay Act:

> (e) Job content controlling. *Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance.* For example, the fact that jobs performed by male and female employees may have the same total point value under an evaluation system in use by the employer does not in itself mean that the jobs concerned are equal according to the terms of the statute. Conversely, although the point values allocated to jobs may add up to unequal totals, it does not necessarily follow that the work being performed in such jobs is unequal when the statutory tests of the equal pay standard are applied. *Job titles are frequently of such a general nature as to provide very little guidance in determining the application of the equal pay standard.* For example, the job title "clerk" may be applied to employees who perform a variety of duties so dissimilar as to place many of them beyond the scope of comparison under the Act. Similarly, jobs included under the title "stock clerk" may include an employee of one sex who spends all or most of his or her working hours in shifting and moving goods in the establishment whereas another employee, of the opposite sex, may also be described as a "stock clerk" but be engaged entirely in checking inventory. In the case of jobs identified by the general title "retail clerk," the facts may show that equal skill, effort, and responsibility are required in the jobs of male and female employees notwithstanding that they are engaged in selling different kinds of merchandise. In all such situations, the application of the equal pay standard will have to be determined by applying the terms of the Act the specific facts involved.

29 C.F.R. § 1620.13(e) (emphasis added). This interpretative regulation is entitled to considerable weight, although it is not controlling. *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 n.7 (7th Cir. 1998) ("The EEOC's guidelines, 'while not controlling upon courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'") (quoting *Smith v. Midland Brake, Inc.*,

138 F.3d 1304, 1308 n.2 (10th Cir. 1998) (in turn quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986))); *Weinand v. Department of Veterans Affairs of the State of Ill.*, No. 05-3232, 2006 WL 1319809, at *3 (N.D. Ill. May 15, 2006).  This argument by the government is not persuasive, however, because the job classification of Ms. Jordan and her male co-workers is not one of a "general nature," as described in the EEOC's regulation.  Instead, it appears to be quite specific as applied to the Administrative Service Center in the FAA's Service Group in Renton.  At least for the purposes of the government's motion to dismiss predicated on RCFC 8, Ms. Jordan's reference to a specific, not general, job description and set of duties is sufficient.

Here, besides identifying allegedly comparable male co-workers by name, specific job classification, and work site, and listing one higher salary, Ms. Jordan also recited in her complaint her prior EEOC charges.  Those charges were incorporated into the complaint by reference and can be considered by the court as matters fleshing out Ms. Jordan's claim.  *See Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010) (ruling that the court could consider state human rights and EEOC decisions and filings in connection with a motion to dismiss); *Byrne v. Telesecor Res. Grp., Inc.*, No. 04-cv-76S, 2005 WL 464941, at *4 (W.D.N.Y. Feb. 25, 2005), *aff'd*, 339 Fed. Appx. 13 (2d Cir. 2009) (taking plaintiff's EEOC charge into account in considering a motion to dismiss where the charge was expressly referenced in the complaint); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (holding that a district court had properly converted a motion to dismiss by defendants to a motion for summary judgment, but also commenting that on a motion filed under Fed. R. Civ. P. 12(c), a trial court may review any document incorporated by reference in one of the pleadings).

In these circumstances, Ms. Jordan has satisfied RCFC 8 by providing "a short and plain statement of the claim showing that [she] is entitled to relief."  RCFC 8(a)(2).  The detailed allegations in the complaint more than suffice to recite a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 578 (quoting *Twombly*, 550 U.S. at 570).  The government's motion to dismiss accordingly is unavailing.  The Supreme Court's decisions in *Iqbal* and *Twombly* required factual plausibility in allegations rather than formulaic recitals, but they did not convert Rule 8 into a command that a complaint must constitute a virtual pretrial memorandum of fact and law for plaintiff.  *See Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 71 (2009) (cautioning against the government's attempt to "collapse discovery, summary judgment[,] and trial into the pleading stages of a case") (citing *Iqbal*, 556 U.S. at 679, *Twombly*, 550 U.S. at 555).

## B.  *Leave to Amend Plaintiff's Complaint*

As a conditional matter, Ms. Jordan seeks leave to amend her complaint if the court were to find the complaint insufficient under RCFC 8.  *See* Pl.'s Cross-Mots. at 10-11.  The government has not responded to this request.  Because the court has found Ms. Jordan's complaint to be sufficient for purposes of RCFC 8, guided by *Iqbal* and *Twombly*, amendment of that complaint is not necessary.  Nonetheless, the court grants Ms. Jordan leave to amend her complaint if she chooses to do so.

### C. *Motion to Compel*

Plaintiff's motion to compel production of documents is premised on the timing provisions of RCFC 34(b)(2)(A). That Rule specifies that "[t]he party to whom the request [for production] is directed must respond in writing within 30 days after being served." RCFC 34(b)(2)(A). This time for responding is subject to adjustment, either by stipulation or by an order of the court. *Id*. Plaintiff contends that the government has been dilatory in its search for, and production of, documents responsive to its requests. Pl.'s Cross-Mots. at 11-12. The government resists this cross-motion on the grounds that the document production was complicated, that it produced documents in three separate phases as it located relevant records, and that to the best of counsel's knowledge, it now has produced all of the requested materials. Def.'s Resp. to Pl.'s Mot. to Compel Produc. of Docs. and Mot. for Sanctions ("Def.'s Resp.") at 2-3, ECF No. 21. The government also objects that plaintiff's counsel conferred by e-mail, not telephone, in advance of filing the motion to compel, *id*. at 4-5, and that the communications were not designed genuinely to avoid judicial intervention, *id*. at 6 (citing *AG-Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 79-80 (2008)). Plaintiff replies that the government has engaged in "an ongoing pattern of delay" in the discovery for this case, even though discovery and other trial preparatory steps are reportedly moving relatively smoothly in the parallel litigation in district court. Pl.'s Reply in Support of Her Mot. to Compel Discovery at 2, ECF No. 23.

Based upon the parties' representations and acknowledgements that the disputed document production has largely been accomplished, there is no basis for the court to intervene by granting plaintiff's motion to compel. That motion is moot for all practical purposes.

### D. *Motion for Sanctions*

Rule 37 provides that a party may seek sanctions for the opposing party's refusal to cooperate in discovery. Specifically, if a motion to compel is granted, the court must require the opposing party or attorney, or both, to pay the movant's "reasonable expenses incurred in making the motion, including attorney's fees," except where the movant did not in good faith endeavor to obtain the discovery without court action, or where the opposing party's actions were "substantially justified," or where circumstances make an award unjust. RCFC 37(a)(5)(A). *See Council for Tribal Emp't Rights v. United States*, 110 Fed. Cl. 244, 248-50 (2013). If the motion to compel is denied, the court may require the movant or the movant's attorney to pay reasonable expenses absent substantial justification or where circumstances make an award unjust. RCFC 37(a)(5)(B). If the motion is granted in part and denied in part, the court may apportion reasonable expenses. RCFC 37(a)(5)(C).

In this instance, an award of expenses under Rule 37(a)(5) is not appropriate. After the motion to compel was filed, the parties were able to obviate their impasse and complete production of requested documents.

## CONCLUSION

For the reasons stated, defendant's motion to dismiss is DENIED, plaintiff's cross-motion for leave to file an amended complaint is nonetheless GRANTED, plaintiff's cross-motion to compel is DENIED as moot, and plaintiff's motion for sanctions is DENIED.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge