# In the United States Court of Federal Claims

No. 13-995C
(Filed Under Seal: July 17, 2015)
(Reissued:  July 27, 2015)

| | | |
|---|---|---|
| **************************************** | | Claim under the Equal Pay Act, 29 U.S.C. |
| | ) | § 206(d); motion for partial dismissal; |
| **MARLENE JORDAN,** | ) | statute of limitations set out in 29 U.S.C. |
| | ) | § 255(a) not jurisdictional; motion for |
| **Plaintiff,** | ) | summary judgment; single-comparator |
| | ) | case; defense based upon merit-based |
| **v.** | ) | system and consideration of comparator's |
| | ) | prior salary |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| **************************************** | | |

Judith A. Lonnquist, Law Offices of Judith A. Lonnquist, P.S., Seattle, Washington, for plaintiff.

Joshua A. Mandlebaum, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Benjamin C. Mizer, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Reginald T. Blades, Jr., Assistant Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Joann M. Putnam, Office of Regional Counsel, Northwest Mountain Region, Federal Aviation Administration, Renton, Washington.

## OPINION AND ORDER[1]

LETTOW, Judge.

Plaintiff, Marlene Jordan, an employee of the United States Department of Transportation, Federal Aviation Administration ("FAA"), alleges that she has been subjected to gender-based discrimination in pay in violation of the Equal Pay Act of 1963 ("Equal Pay Act"), 29 U.S.C. § 206(d).  Specifically, she claims that she was paid less than a named male co-worker

---

[1]Because this opinion and order might have contained personal information of a private or confidential nature within the meaning of Rule 26(c)(1) of the Rules of the Court of Federal Claims ("RCFC") and the protective order entered in this case, ECF No. 10, including records falling within the scope of the Privacy Act, 5 U.S.C. § 552a, it was initially filed under seal.  The parties were requested to review this opinion and order and to provide proposed redactions of any private or confidential information.  No redactions were requested.

for performing substantially equal work.  The government seeks partial dismissal of plaintiff's complaint for lack of subject matter jurisdiction on the basis that a portion of plaintiff's claims is barred by the statute of limitations pertinent to the Equal Pay Act, 29 U.S.C. § 255(a).  The government has moved for summary judgment with respect to the remainder of Ms. Jordan's claims.

For the reasons stated below, the government's motion for partial dismissal is subsumed into its motion for summary judgment, which is GRANTED.

## BACKGROUND[2]

Plaintiff is an African-American woman.  Compl. ¶ 3.  She has been employed by the FAA since 1998 and currently works as a Management and Program Analyst in the Administrative Services Group at the Northwest Mountain Region Western Service Center in Renton, Washington.  Compl. ¶¶ 3-4; *see also* Decl. of Marlene M. Jordan in Support of Pl.'s Response in Opp'n to Def.'s Mot. for Partial Dismissal and Summary Judgment ("Jordan Decl.") ¶ 2, ECF No. 35.  Her remuneration is set within a pay band defined as the FAA's FV-343-H Series, H-band.[3]  Compl. ¶ 4.  On or about February 2012, plaintiff discovered that a named male colleague ("Mr. A"), who also worked as an H-band Management and Program Analyst beginning in September 2011, earned a base salary that exceeded her base pay by approximately $20,679 per year.  Compl. ¶ 5.  Plaintiff and Mr. A shared a supervisor, Ms. Norma Johnson,

---

[2]The recitation of facts that follows is taken from the parties' pleadings and their filings related to the government's motion for summary judgment, including especially the documentary materials submitted with the parties' filings.  References to the appendix submitted in support of the government's motion for partial dismissal and summary judgment, *see* App. to Def.'s Mot. for Partial Dismissal and Summary Judgment, ECF Nos. 32-1 to -9, shall be to "A___."

[3]The FAA's "core compensation" pay system, in place since April 2000, uses "pay bands" to set the range of base salaries allowed for given positions.  *See* Def.'s Mot. for Partial Dismissal and Summary Judgment ("Def.'s Mot.") at 2, 3, ECF No. 32 (citing A193-98 (Core Comp. Plan)).  Excluding the effect of locality pay, the bands range from the A-band (the lowest) to the M-band (the highest), with partial overlaps among neighboring bands.  *See id.* at 3 (citing A164 (Core Comp. Pay Bands (Dec. 30, 2011)), A197-98 (Core Comp. Plan Informational Materials), & A15-26 (Core Comp. Plan Informational Materials)).  When an employee is hired, his or her manager may set his or her pay anywhere within the position's pay band based on the consideration of pertinent criteria.  *See id.* (citing A228-29 (Human Resources Policy Manual, Pay-Setting Principles for Placement in the Core Comp. Plan) & A232 (FAA New Hire/Conversion Salary Decision Tool)).  Within the pay band, employees are eligible for two types of raises: general "organization success increases" awarded to all FAA employees and individual, merit-based "superior contribution increases."  *See id.*  Employees are also eligible for raises upon promotion up to 15% over the prior pay to amounts within the new position's pay band (or raises of more than 15% in cases where the increase is necessary to fit within the new pay band).  *See id.* at 5 (citing A222 (HRPM Core Comp.-2.6C, Flexible Promotion Increases in the Core Comp. Plan (Mar. 12, 2002))).

who was responsible for approximately 15-18 employees, the majority of whom were women. *See Jordan v. Foxx*, No. 13-cv-02280 RSM, slip op. at 2 (W.D. Wash. May 11, 2015), *appeal pending*, No. 15-35567 (9th Cir.) (ruling in a Title VII claim brought by Ms. Jordan).  Plaintiff alleges that she "perform[ed] the same work" but was denied the same pay as Mr. A because of her sex.  Pl.'s Response in Opp'n to Def.'s Mot. for Partial Dismissal and Summary Judgment ("Pl.'s Opp'n") at 1, ECF No. 33.  As a result, this action has become a "single comparator" case.[4]

## I. MS. JORDAN'S WORK HISTORY AT THE FAA

### A. *Base-Pay Progression*

Ms. Jordan was first hired by the FAA on September 13, 1998 as a secretary.  *See* Def.'s Mot. at 5 (citing A239-40 (Jordan's Complete FAA Employment History (Mar. 30, 2015)), A241 (Letter from Program Management Specialist to Jordan (Sept. 4, 1998)), & A242-44 (Notification of Personnel Action (Dec. 20, 1998))).  Her base pay was set at grade 6, step 7 under the then-applicable "general schedule" for compensation and amounted to $26,710 per year.  *Id*.  On October 11, 1998, she was reassigned as a "certification records assistant (typing)," and her pay remained unchanged.  *See id.* (citing A240 & A244).  On December 6, 1998, Ms. Jordan received a promotion to the position of "program support assistant," at grade 7, step 6, with an increase in her base salary to $28,854.  *See id.* (citing A240 & A245 (Notice of Personnel Action (Dec. 6, 1998))).  Plaintiff also received general increases common to all FAA employees on January 3, 1999, January 2, 2000, and January 14, 2001, by 3.1%, 3.8%, and 2.7%, respectively, such that her base salary in January 2001 amounted to $32,621.  *See id.* (citing A247 (Notice of Personnel Action (Jan. 2, 2000)), A248 (Notice of Personnel Action (Dec. 3, 2000)), & A249 (Notice of Personnel Action (Jan. 14, 2001))).

On September 23, 2001, plaintiff was promoted to "management and program analyst," and the FAA converted to the new core compensation system, placing her at the F-band.  *See* Def.'s Mot. at 5 (citing A250 (Notice of Personnel Action (Sept. 23, 2001)) & A251 (Pay Setting Worksheet for FG to FV Moves (Aug. 30, 2001))).  With the promotion, her managers decided to increase Ms. Jordan's base salary by 8% to $35,231, which was a bit below the $37,500 mid-point for the F-band at the time.  *See id.* at 6 (citing A240, A250-51, & A254 (Core Comp. Plan Pay Bands (2001, 2002)).  She received an additional raise on December 30, 2001, increasing her base salary to $37,073.  *See id.* at 6 (citing A253 (Notice of Personnel Action (Dec. 30, 2001)) & A240).  On September 22, 2002, she was promoted to the G-band and her managers elected to increase her base salary by 8% to $40,039.  *See id*.  After receiving a raise of 4.1% on January 12, 2003 and a promotion to the H-band with an 8% raise on November 16, 2003, Ms. Jordan's base salary increased to $45,015, which was $615 above $44,400, the bottom of the H-band.  *See id.* (citing A260 (Notice of Personnel Action (Nov. 16, 2003)) & A261-64 (Justification for Promotion Increase Decision Tool & Background Materials)).

---

[4]Ms. Jordan initially alleged that four other named male employees who occupy H-band Management and Program Analyst positions at the FAA earned a higher base pay than she did.  Compl. ¶ 5.  Facts related to that allegation were not presented to the court in connection with the parties' submissions related to the pending motion.

Ms. Jordan presently remains at the H-band, *see* Def.'s Mot. at 6, *see also* Jordan Decl. ¶ 2, although in 2007 and 2010, she received two temporary promotions to I-band positions, *see* Def.'s Mot. at 6 (citing A239-40).  Since 2001, she has also received general "organizational success increases" awarded to most if not all FAA employees, but she has not received an individual merit-based "superior contribution increase." *See id.* at 4 & 6 (citing A265-75 & A277-303 (OCI Announcements, 2004-2015)).  The "organizational success increases" have raised her base salary to $59,677. *Id.* at 6.  The H-band currently ranges from $51,005 to $79,058. *Id.*  Including locality pay for the Seattle area, her current pay amounts to $72,693 per year. *Id.* (citing A239).

B.  *Job Duties from 2011 until Present*

In 2011, Ms. Jordan served as a staffing specialist on the Technical Operations and Service Center subteam within the Employee Services Team.  *See* Def.'s Mot. at 17 (citing A1-2 (Jordan's Responses to Gov't Interrogs. (Mar. 12, 2015)) & A72-73 (Charts of Employee Service Team Work Assignments)); *see also* Pl.'s Opp'n at 2.[5]  Roughly 90% of her time was dedicated to assisting the Southern California Terminal Radar Approach Control facilities in the FAA's Los Angeles, Denver, Honolulu, and Phoenix districts with "staffing-related issues." Def.'s Mot. at 17 (citing A2, A71 (Summaries of Jordan's Duties) & A16-20 (Jordan Dep. (Jan. 21, 2015))).[6] She was also responsible for completing a brochure for managers interested in hiring student interns.  *See id.* (citing A82 (Supervisor Notes (Apr. 11, 2011)) & A84 (Supervisor Notes (Aug. 2, 2011))); *see also* Pl.'s Opp'n at 11-12.

From 2011 until present, Ms. Jordan has been assigned on several details.  On November 21, 2011, she began a three-month detail to the Business Services Group. *See* Def.'s Mot. at 17 (citing A88 (Jordan's Final Evaluation (Oct. 28, 2011))).  During that time, she primarily attended training on use of new programs and completed data entry. *See id.* at 18.  After the three-month period ended, she returned to the Technical Operations and Service Center subteam within the Employee Services Team in February 2012, before going on another detail to the Air Traffic subteam within the Employee Services Team in May 2012, where she was primarily responsible for completing training and data entry. *See id.* at 18-19.  In late 2012, she returned to the Technical Operations and Service Center subteam and was assigned to the Los Angeles and Honolulu districts. *See id.* at 19.  In October 2013, after the retirement and replacement of Ms. Johnson, the Employee Services Team's manager, Ms. Jordan began a second detail to the Air Traffic Team but was later removed from the team by her new manager, Mr. Jerome Woods.

---

[5]The Employee Services Team "manages personnel-related actions for different divisions of the FAA, acting as a liaison between human resources . . . and the administrative staff of those divisions." Pl.'s Opp'n at 2.

[6]Ms. Jordan's responsibilities specifically included "working closely with managers and human resources personnel on various staffing-related issues in various FAA [d]istrict locations[,] reviewing and processing personnel actions (e.g. pay-setting tools, promotions, reassignments, details)[,] serving as a position management subject matter expert[,] and ensuring accuracy of personnel-related tools and documentation prior to submission to [human resources]." Pl.'s Opp'n at 2.

*See id*. at 19-20 (citing A312 (Woods Decl. (Apr. 3, 2015)) & A324 (Ex. B to Woods Decl.)). Upon her return to the Technical Operations and Service Center subteam, she was assigned to work on standard operating procedures and act as a back-up for the Service Center, and she was later assigned to the Salt Lake City and Technical Services districts. *See id*. at 20 (citing A38-40 & A81 (Work Assignment Chart)). Finally, in May 2014, after filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), Ms. Jordan was placed on a third detail to the Office of Civil Rights, where she processed reports on external complaints and on the budget. *See* Def.'s Mot. at 20-21 (citing A40-41). In addition, she helped plan a conference, during which she primarily was responsible for communicating with hotels. *See id*. at 21.

Throughout the period from 2011 to 2014, Ms. Jordan also was responsible for several miscellaneous additional duties, including preparing a "PASS Tech" report every two weeks, updating numbers on a spreadsheet after checking them with the Federal Personnel Payroll System, serving as the back-up to the Service Center, attending job fairs, serving as the "focal" person for the student intern program until 2013, and serving as the "focal" person for emergency planning for the Administrative Services Group from 2012 to 2013. *See* Def.'s Mot. at 21-23 (citing A22-23, A25-27, & A32-35 (Jordan Dep. (Jan. 21, 2015))). These duties took up a relatively small proportion of Ms. Jordan's time and generally involved attending meetings, completing and scanning forms, and checking computerized systems. *See id*.; *see also* Pl.'s Opp'n at 12-13.

## II. THE COMPARATOR'S WORK HISTORY AT THE FAA

### A. *Base-Pay Progression*

Mr. A was initially hired by the FAA in November 2010 after an extensive career in the Navy. *See* Def.'s Mot. at 6 (citing A45-46 (Mr. A Dep. (Jan. 20, 2015))). His first position was in the E-band with a base pay of $42,000 per year. *See id.* (citing A136 & A192 (Complete FAA Employment History for Mr. A (Mar. 30, 2015))). In January 2011, he was promoted and began a J-band "team lead" position on the Employee Services Team – the same team as plaintiff – and his base pay was set at $73,600, the bottom of the J-band. *See id.* at 7 (citing A49-50 (Mr. A Dep.)).[7] After a few months, because he sensed that his performance suffered from some shortcomings, Mr. A requested a voluntary demotion to any open I- or H-band position to "help him learn from the ground up, gain the trust and respect of his colleagues and customers, and eventually return to a lead position." *Id.* at 7-8 (citing A65-66 (Mr. A Aff. (May 17, 2013))). Mr. A's request was granted, and on August 28, 2011, he began serving as an H-band staffing specialist on the Employee Services Team. *See id*. at 8. Ms. Johnson in her discretion maintained his base pay at his previous level. *See id.* (citing A213 (Carillo Dep. (Feb. 13,

---

[7]A "lead" serves as a "liaison between the team members and their manager, oversees the accomplishment[s] of the team's work, and gives the manager input about team members' performance[s]." Def.'s Mot. at 7 (citing A140-44 (Johnson Dep. (Jan. 22, 2015)); *see also* Hr'g Tr. 8:9 to 9:24 (June 24, 2015) ("[A team lead doesn't] have hiring and firing authority. So, [he or she is] more . . . like a senior team member . . . who acts as an intermediary between the other team members and the supervisor.").

2015)), A235 (Human Resources Operating Instruction Determining Pay for Employees Being Demoted (Jan. 11, 2004)), & A238 (HRPM Comp. 2.11, Demotions (Mar. 12, 2002))).[8]  She justified her decision by noting her expectation that Mr. A "would continue to do some higher level duties" and her acknowledgment that the demotion was not a punishment but rather the result of "his own recognition that he had some areas that he wanted to improve."  *Id.* (citing A150).  Ms. Johnson also expressed her intention to move Mr. A into an I-band position once one became available.  *See id.* (citing A136 & A146-47).  The director of the Western Service Center approved Ms. Johnson's decision.  *See id.* at 9 (citing A354); *see also* Pl.'s Opp'n at 7.  After receiving general "organizational-success increases" plus locality pay for the Seattle area, Mr. A's adjusted pay has become $94,207 per year.  *See id.* (citing A192).[9]

## B.  *Job Duties from 2011 until Present*

Mr. A currently serves as the staffing specialist for the Anchorage, Honolulu, and Oakland districts.  *See* Def.'s Mot. at 9 (citing A53).  About half of his time is dedicated to this responsibility.  *See id.* (citing A304-07 (Mr. A Decl. (Apr. 3, 2015))).  The other half of his time is spent on additional duties, including the following: (1) position-sensitivity coding for the air traffic organization's Western Service area;[10] (2) annual review of the Technical Operations organization's Western Service Area to ensure compliance with the Federal Activities Inventory Reform Act;[11] (3) review of Technical Operations "in-position increase" requests;[12] (4) service

---

[8]Under the Human Resources Policy Manual Core Comp.-2.11C and the corresponding Human Resources Operating Instructions, managers are instructed that for voluntary demotions, they have the authority "to set pay within the pay band up to the employee's Highest Previous Rate or employee's current rate."  Pl.'s Opp'n at 7 (citation and quotation marks omitted). Therefore, the FAA's voluntary demotion policy does not require a pay adjustment when an employee's pre-demotion pay falls within a "pay band" of the lower position.  *See* Def.'s Mot. at 2; *see also* A356 (Fletcher Dep. (Jan. 23, 2015)).

[9]Like plaintiff, Mr. A has not received any "superior contribution increases" since 2011. *See* Hr'g Tr. 46:5-11 (June 24, 2015).

[10]This duty, which covers the FAA's air-traffic organization's entire Western Service Area, includes "verifying that drug and alcohol tests are being performed on the right employee[s]."  *See* Def.'s Mot. at 11-12 (citing A55).

[11]Mr. A dedicates about three days annually to this duty, which primarily consists of reviewing whether Technical Operations positions are "truly governmental" and therefore must be performed by a government employee rather than a contractor.  *See* Def.'s Mot. at 12-13 (citing A53 & A56); *see also* Pl.'s Opp'n at 9.

[12]"In-position increases" are special pay increases with a higher maximum percentage than superior contribution increases.  *See* Def.'s Mot. at 13 (citing A56).  Mr. A ensures that all requests comply with FAA policies, checks the corresponding "write-ups," and advises the Technical Operations director on review of the requests, acting as a "gate guard" to ensure the adequacy of the requests before they reach high-level officials.  *See id.*  He generally reviews

as the "focal" or back-up point of contact for the centralized selection process used by Technical Operations to hire entry-level employees;[13] and (5) occasional review of Technical Operations positions to ensure proper classification for furloughs.  *See id.* at 10 (citing A53, A201-02 (FAA Core Comp. Plan), & A305-06); *see also* Pl.'s Opp'n at 9-10.  In addition, Mr. A has regularly continued to perform "lead" duties after his demotion, including "attend[ing] and conduct[ing] meetings and coordinat[ing] with executive staff."  *See id.* at 14 (citing A151).

## PROCEDURAL HISTORY

In 2012 and 2013, Ms. Jordan filed complaints against her supervisor with the EEOC alleging discrimination based on race and sex and retaliation.  *See Jordan v. Foxx*, slip op. at 6-7.[14]  On February 8, 2013, those allegations were presented to the EEOC, which accepted the complaints for hearing by an administrative law judge, but ultimately no such hearings were held.  *See Jordan v. Foxx*, slip op. at 6.  *See also* Def.'s Mot. at 20; Jordan Decl. ¶ 8.

On December 19, 2013, pursuant to 42 U.S.C. § 2000e-5, Ms. Jordan filed a complaint in the federal district court in the Western District of Washington.  *See Jordan v. Foxx*, No. 2:13–cv–02280–RSM (W.D. Wash. filed Dec. 19, 2013).  In the district court case, she sought relief from discrimination based on sex and race through the invocation of the Civil Rights Act of 1964, Title VII, as amended by the Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, § 11, 86 Stat. 111, the Civil Rights Act of 1991, Pub. L. No. 102-66, § 114, 105 Stat. 1079, and the Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 5(c)(2), 123 Stat. 5 (codified at 42 U.S.C. § 2000e-16).[15]

On December 16, 2013, Ms. Jordan filed a complaint in this court, alleging gender-based discrimination in pay in violation of the Equal Pay Act of 1963.  She alleges that she and her male co-workers "perform equal work on jobs requiring equal skill, effort[,] and responsibility, and the jobs are performed under similar working conditions."  Compl. ¶ 6.  She additionally

---

about 2 requests per month, although during one recent month he reviewed "20 to 30."  *See id.* (citing A57); *see also* Pl.'s Opp'n at 9.

[13]The centralized selection process occurs once or twice a year and lasts a week including travel time.  *See* Def.'s Mot. at 14.  Mr. A answers questions about hiring rules and ensures consistency in hiring.  *See id.*

[14]In total, Ms. Jordan has filed four EEO complaints while employed with the FAA.  *See Jordan v. Foxx*, slip op. at 7 n.5. Two of the complaints were made against her female supervisors and the other two complaints were made against different male supervisors.  *See id.* Each claim either has resulted in a finding of no discrimination or was resolved through mediation.  *See id.*

[15]The district court ultimately granted summary judgment for the Secretary of the Department of Transportation, ruling that the FAA had neither discriminated against Ms. Jordan on the basis of race nor retaliated against her for filing EEO complaints.  *See Jordan v. Foxx*, slip op. at 30.

avers that the difference in pay between her and Mr. A "was not part of or occasioned by a seniority system, merit system[,] a system based on quantity or quality of production, or upon a legitimate 'factor other than sex.'" Compl. ¶ 6.  Instead, she claims that the pay differential "is the result of a discretionary decision made by the former supervisor of [her] unit . . . ." Compl. ¶ 6.  As a result, Ms. Jordan claims that she "is now suffering and will continue to suffer irreparable injury and monetary damages." Compl. ¶ 12.  In terms of relief, she seeks the following: (1) "a judgment declaring that the acts, policies[,] and practices of the [government] are in violation of the laws of the United States;" (2) "equitable relief and compensatory and punitive damages including back pay, front pay[,] and benefits (including pre- and post-judgment interest) and liquidated damages to which [p]laintiff is entitled under the Equal Pay Act" amounting to not less than $41,358; (3) costs of suit, including attorney's fees and expenses; and (4) "such other and further relief as the [c]ourt may consider just and proper." Compl. ¶¶ 3-4.  She seeks relief for the period from August 28, 2011 to present. *See* Def.'s Mot. at 16 (citing A1).

The government filed a motion for partial dismissal and summary judgment on April 13, 2015.[16]  In its motion, the government avers that any pay discrepancies "have [nothing] to do with sex or gender" but rather are the result of the FAA's voluntary-demotion policy and the fact that plaintiff was awarded pay increases of less than the maximum 15% during her promotions. Def.'s Mot. at 2.  Furthermore, the government argues that the duties of Mr. A and plaintiff are not "substantially equal" and that Mr. A "spends half his time on duties that Ms. Jordan has never performed." *Id*.  Finally, the government argues that a portion of plaintiff's claims are barred by the statute of limitations applicable to the Equal Pay Act. *Id*. at 38-39.

A hearing on the government's motion was held on June 24, 2015.  The issues before the court are fully briefed and accordingly are ready for disposition.

## STANDARDS FOR DECISION

### A. *Statute of Limitations*

The Equal Pay Act serves as a money-mandating statute that provides a basis for this court to exercise jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1).  *See, e.g.*, *Harbuck v. United States*, 378 F.3d 1324, 1330 (Fed. Cir. 2004) (noting that a plaintiff could "have filed her Equal Pay Act case in the Court of Federal Claims"); *Thomas v. United States*, 86 Fed. Cl. 633, 636 n.6 (2009), *aff'd*, 351 Fed. Appx. 433 (Fed. Cir. 2009); *Cooke v. United States*, 85 Fed. Cl. 325, 341 (2008), *appeal dismissed*, 325 Fed. Appx. 429 (Fed. Cir. 2009) ("The Equal Pay Act constitutes . . . a money-mandating statute over which this [c]ourt has jurisdiction.").[17]

---

[16]The court previously denied a motion by the government to dismiss the complaint pursuant to RCFC 12(c) and 12(h)(2)(B). *See Jordan v. United States*, 119 Fed. Cl. 694 (2015). The government had contended that Ms. Jordan's complaint failed to allege sufficient facts under RCFC 8 to state a viable claim for relief.

[17]The Tucker Act grants this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any

A claim brought under the Equal Pay Act must be filed within two years from the time of accrual. 29 U.S.C. § 255(a) (establishing a limitations period for claims under the Fair Labor Standards Act); *see also Santiago v. United States*, 107 Fed. Cl. 154, 158 (2012). However, where an employer willfully violates the Act, the limitations period is extended to three years. 29 U.S.C. § 255(a).[18] The plaintiff bears the burden of proving that the employer's conduct was willful. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988) ("To obtain the benefit of the [three]-year [statute of limitations period], the [plaintiff] must prove that the employer's conduct was willful. . . ."); *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003) ("[T]he employee bears the burden of proving the willfulness of the employer's FLSA violations."). A "willful violation" exceeds negligence and occurs where "the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act." 5 C.F.R. § 551.104. "Reckless disregard" means "failure to make adequate inquiry into whether conduct is in compliance with the Act." *Id.*

In general, a cause of action accrues "when all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis in original); *see also Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009); *Katzin v. United States*, 120 Fed. Cl. 199, 209 (2015). Under the Equal Pay Act, a claim accrues every time an allegedly insufficient paycheck is issued. *See, e.g., Santiago*, 107 Fed. Cl. at 159; *Lange*, 79 Fed. Cl. at 631; *Weber v. United States*, 71 Fed. Cl. 717, 725 (2006) (noting that "*each and every* paycheck that [plaintiff] received during the periods encompassed by her

---

regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Nonetheless, the Act itself does not provide a substantive right to monetary relief against the United States. *United States v. Testan*, 424 U.S. 392, 398 (1976); *see also Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003) (en banc). To fulfill the juridical requirements of the Tucker Act, the plaintiff must establish an independent right to monetary damages by identifying a substantive source of law that mandates payment from the United States for the injury suffered. *Testan*, 424 U.S. at 400; *see also Ferreiro v. United States*, 501 F.3d 1349, 1351-52 (Fed. Cir. 2007) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

[18]The time-bar specified under 29 U.S.C. § 255(a) is not jurisdictional. *See, e.g., Santiago*, 107 Fed. Cl. at 159 (noting that "a statute of limitations defense is identified in this court's rules as one that must be pleaded affirmatively in the government's answer to plaintiff's complaint) (citing RCFC 8(c)); *Lange v. United States*, 79 Fed. Cl. 628, 631 (2007) (observing that "the doctrine of equitable tolling can be applied to the [Equal Pay Act's] statute of limitations"); *compare John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (holding that the time-bar specified by 28 U.S.C. § 2501 is jurisdictional), *with Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1320-22 (Fed. Cir. 2014) (ruling, by contrast, that the statute of limitations set out in the Contract Disputes Act, 41 U.S.C. § 7103, is not jurisdictional, placing that statute of limitations in the realm of those subject to RCFC 8(c) (listing "statute of limitations" among affirmative defenses)).

claims was allegedly lower than it otherwise should have been because of gender discrimination, and [plaintiff] has a resulting chain of claims derived from each pay period" and consequently, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act") (emphasis in original) (internal citations and quotation marks omitted); *see also Bearden v. Int'l Paper Co.*, 628 F. Supp. 2d 984, 996 (E.D. Ark. 2007), *aff'd*, 529 F.3d 828 (8th Cir. 2008) ("A claim charging denial of equal pay accrues anew with each paycheck.").

## B. *Summary Judgment*

A grant of summary judgment is appropriate when the pleadings, affidavits, and evidentiary materials filed in a case demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a).  A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute is one that might "return a verdict for the nonmoving party." *Id*.  If "the record taken as a whole [cannot] lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

The burden is on the moving party to demonstrate the absence of genuine disputes. Accordingly, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587-88 (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party may defeat summary judgment by presenting its own material facts that constitute more than "[m]ere denials or conclusory statements" and indicate "an evidentiary conflict created on the record." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).  To establish "that a fact cannot be or is genuinely disputed," a party must "cite[] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A).

## ANALYSIS

## I. STATUTE OF LIMITATIONS

The government first avers that because Ms. Jordan filed her complaint in this court on December 16, 2013, any claims arising prior to December 16, 2011 are time-barred under the Equal Pay Act's two-year limitations period. *See* Def.'s Mot. at 39.[19]  Ms. Jordan instead insists

_____

[19]The government has framed its argument about the statute of limitations within a motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction. *See* Def.'s Mot. at 1.  Because the limitations period for Equal Pay Act claims is not jurisdictional, *see supra*, at 9 n.18, the government must raise the time-bar of plaintiff's claims as an affirmative defense, *see, e.g.*, *Santiago*, 107 Fed. Cl. at 159, which the government did in its answer to plaintiff's complaint, Def.'s Answer ¶¶ 16-17, ECF No. 5.  Accordingly, the court shall address

that "[the] court should find [the FAA's] conduct to be in reckless disregard of its obligation under the [Equal Pay Act]" and apply a three-year statute of limitations period because the FAA acted willfully in retaining the pay disparity between plaintiff and Mr. A after plaintiff gave the FAA notice of the discrepancy by filing an EEO complaint.  *See* Pl.'s Opp'n at 26.

Under the circumstances presented, the court cannot accept Ms. Jordan's contention that there is evidentiary support for the proposition that the FAA's alleged violation of the Equal Pay Act was willful.  As the government points out, plaintiff did not file her EEO complaint until February 8, 2013, almost a year and a half after August 28, 2011, the date on which she alleges the disparity became actionable.  *See* Def.'s Mot. at 39.  Moreover, the filing of a formal administrative complaint alone does not toll the statute of limitations for Equal Pay Act claims. *See, e.g.*, *Hickman v. United States*, 10 Cl. Ct. 550, 552 (1986).  Merely putting the FAA on notice of a pay discrepancy and the claimed applicability of the Equal Pay Act is not enough to establish that the FAA willfully violated the statute.  *See Santiago*, 107 Fed. Cl. at 160 (noting that "willfulness requires more than mere awareness").  Finally, contrary to plaintiff's assertions, it is not the case that the FAA "t[ook] no steps to remedy the situation," Pl.'s Opp'n at 26; the FAA conducted an investigation and also arranged for plaintiff to serve on a detail in the Civil Rights Division, *see* Def.'s Mot. at 39 (citing A369-83 (FAA Report of Investigation (Aug. 5, 2013))).  Ms. Jordan has put forth no meaningful evidence of willful disregard of plaintiff's claims by the FAA.  Therefore, the two-year statute of limitations period applies, and plaintiff's claims arising prior to December 16, 2011 are time-barred.

## II.  EQUAL PAY FOR EQUAL WORK

The government has moved for summary judgment on Ms. Jordan's equal pay claims, asserting two primary grounds.  First, the government argues that Ms. Jordan did not perform work that was substantially equal to the work performed by Mr. A because after his voluntary demotion, Mr. A continued to perform duties carried over from his J-band position that required more skill, effort, and responsibility than plaintiff's duties.  *See* Def.'s Mot. at 30.  Second, and in the alternative, the government argues that even assuming Ms. Jordan and Mr. A performed substantially equal work, the pay differential between them was nevertheless justified by two of the four exceptions set forth in the Equal Pay Act, *viz.*, a merit system and "factors other than sex."  *See id.* at 34-38; *see also* 29 U.S.C. § 206(d)(1)(ii), (iv) (excepting a payment made pursuant to "a merit system" and "a differential based on any other factor other than sex"); Hr'g Tr. 39:25 to 40:5 (June 24, 2015) ("We do make [the argument that the pay difference is justified based on a merit system] because part of the reason for the pay difference is that Ms. Jordan has not received merit-based superior contribution increases for the last 14 years.").[20]

The Equal Pay Act prohibits employers, including the federal government, from discriminating in its pay practices on the basis of gender:

---

the government's arguments on the limitations period as a matter to be addressed with the motion for summary judgment.

[20]Further citations to the transcript will omit reference to its date.

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment *for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions*, *except* where such payment is made pursuant to (i) a seniority system; (ii) *a merit system*; (iii) a system which measures earnings by quantity or quality of production; or (iv) *a differential based on any other factor other than sex . . . .*

29 U.S.C. § 206(d)(1) (emphasis added).[21]  To establish a *prima facie* case under the Equal Pay Act, a plaintiff must establish that he or she received a lower wage for performing "equal work . . . requir[ing] equal skill, effort, and responsibility" to that carried out by a comparator of the opposite sex under similar working conditions.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)(1)); *see also Brooks v. United States*, 101 Fed. Cl. 340, 344 (2011); *Branch v. United States*, 101 Fed. Cl. 411, 414 (2011) (citing *Yant*, 588 F.3d at 1374; *Moorehead v. United States*, 84 Fed. Cl. 745, 747 (2008)).[22]  The "comparator" selected by the plaintiff must be a particular individual whose work enables a "'factor by factor'" comparison and may not be "a hypothetical or 'composite' [member of the opposite sex]."  *Strag v. Board of Trustees*, 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v. Virginia Polytechnical Inst.*, 10 F.3d 204, 206 (4th Cir. 1973)); *see also Santiago*, 107 Fed. Cl. at 158; *Moorehead v. United States*, 88 Fed. Cl. 614, 619 (2009).  In addition, "equal" does not mean identical but rather "substantially equal," and the court in its analysis should focus on the individuals' primary rather than incidental duties.  *See Branch*, 101 Fed. Cl. at 414 (citing 29 C.F.R. §§ 1620.13(a),

---

[21]The Equal Pay Act was enacted by Congress in 1963 as an amendment to the Fair Labor Standards Act, 29 U.S.C. §§ 201-19.  *See generally Yant v. United States*, 588 F.3d 1369, 1371 (Fed. Cir. 2009).  A statutory amendment was adopted in 1974 that applies the Act to the federal government.  *See* Pub. L. No. 93-259, § 6(a)(1), 88 Stat. 58 (codified at 29 U.S.C. § 203(e)(2)); *see also Molden v. United States*, 11 Cl. Ct. 604, 609 (1987).

[22]The several elements listed in the Equal Pay Act (skill, effort, and responsibility) each constitute a separate test, and each must be independently met.  *See* 29 C.F.R. § 1620.14(a); *see also Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 695 (7th Cir. 2006).  These elements have been generally defined by courts in the following terms:

Skill includes consideration of such factors as experience, training, education, and ability.  Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job.

*Martin v. United States*, 96 Fed. Cl. 627, 630 (2011) (quoting 29 C.F.R. §§ 1620.15(a), 1620.16(a), 1620.17(a)) (internal quotation marks and citations omitted).

1620.14); *see also Santiago*, 107 Fed. Cl. at 158 (citing *Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 (3d Cir. 1970)).

Once plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to show that the pay differential falls under one of the Equal Pay Act's four enumerated exceptions, *County of Wash. v. Gunther*, 452 U.S. 161, 169 (1981); *Corning Glass*, 417 U.S. at 196, namely, "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex," 29 U.S.C. § 206(d)(1).

## A.  Plaintiff's *Prima Facie* Case

To establish her *prima facie* case, Ms. Jordan has selected Mr. A as her comparator to demonstrate that she was paid less than a male for performing equal work.  Plaintiff maintains that from August 28, 2011[23] until present, she and Mr. A have both served as staffing specialists with the same "common core" of tasks including "balancing staffing numbers and resolving any staffing-related issues for their customers."  Pl.'s Opp'n at 20.[24]  While plaintiff concedes that she and Mr. A independently performed "additional tasks," she avers that the "additional tasks did not make their jobs 'substantially different.'"  *Id.*

Ms. Jordan first alleges that Mr. A's and her additional tasks required equal skill.  In particular, plaintiff avers that many of Mr. A's additional tasks "such as drug test coding, FAIR Act reviews, in-position increases[,] and furlough review" required equal skill as plaintiff's tasks of drafting the PASS Tech biweekly reports and serving as the Service Center back-up.  Pl.'s Opp'n at 21.  In plaintiff's view, Mr. A's task of serving as centralized-selection-process back-up also required the same "interpersonal and communication skills" necessary for plaintiff's responsibilities with regard to student programs, job fairs, and serving as the Service Center back-up.  *Id.*  Second, Ms. Jordan claims that both employees' tasks required equal effort.  *Id.* at 22.  She observes that because "the manager regularly rebalance[d] every team member's workload (i.e. effort) so that everyone ha[d] a full plate and no one [was] overburdened," it therefore "logically follows that the total effort exerted by [plaintiff] and [Mr. A] [was] equal." *Id.*[25]  Finally, plaintiff argues that tasks performed by her and Mr. A required substantially equal

---

[23]August 28, 2011 is the date when Mr. A's voluntary demotion became effective, and he began serving as an H-band staffing specialist on the Employee Services Team alongside plaintiff.  *See* Def.'s Mot. at 8 (citing A213, A235, & A238); *see also* Pl.'s Opp'n at 5.

[24]It is undisputed by the parties that Ms. Jordan and Mr. A were employed under "similar working conditions since 2011."  Pl.'s Opp'n at 19.

[25]The supervisor, Ms. Johnson, explained,

[t]he purpose of workload adjustments was not to make sure that every team member was doing the exact same amount of work.  The purpose was to make sure that no one felt overburdened or underburdened. Attempting to assign the exact same amount of work to each team member would have been impractical because assignments vary in

responsibility.  In support of her view, Ms. Jordan underscores that Mr. A's drug testing tasks and plaintiff's emergency planning tasks both required a high degree of accountability, and their other tasks required both of them to "giv[e] accurate information to Headquarters and interact with high-level managers and administrative officers."  *Id*. at 23.

In essence, Ms. Jordan has demonstrated that a pay differential existed between her salary and that of a male colleague, Mr. A, but nothing beyond that.  She has alleged no other discriminatory treatment by her supervisor[26] and has made no showing of any indicia of present or past discrimination against her on the basis of sex by any FAA employee.  *See* A43 (plaintiff states that she has "never given . . . any thought" as to whether Mr. A's pay retention would be different if he were a woman).[27]  Instead, plaintiff's efforts are predominantly dedicated to

---

terms of complexity . . . .

Supplemental App. to Def.'s Reply to Pl.'s Response to Def.'s Mot. for Partial Dismissal and Summary Judgment ("Def.'s Reply") ("Johnson Decl.") ¶ 7, ECF No. 36.

[26]Ms. Jordan's and Mr. A's supervisor until 2013 was female.  *See* Hr'g Tr. 8:2-18.

[27]In *Corning Glass*, 417 U.S. 188, involving male and female shift inspectors at a glass plant, the Supreme Court established the framework for treatment of claims brought under the Equal Pay Act.  In its analysis of the facts in that case, the Court referred to the history of the compensation of male and female workers, observing that prior to the enactment of the Equal Pay Act, state laws prohibited women from working at night and the defendant paid higher wages to its male night shift workers than to its female day shift inspectors.  *See id*. at 190-91.  The Court noted that, "*[a]s its history revealed*, the higher night rate was in large part the product of the generally higher wage level of male workers and the need to compensate them for performing what were regarded as demeaning tasks."  *Id*. at 204-05 (emphasis added) (internal citations and quotation marks omitted).  In *Yant*, the Federal Circuit applied *Corning Glass* to a class action involving two mixed gender groups and held that while a plaintiff need not make "a showing of discriminatory intent" to successfully make out a *prima facie* case under the Equal Pay Act, he or she must demonstrate "that discrimination based on *sex exists or at one time existed*."  588 F.3d at 1373 (emphasis added); *see also* Hr'g Tr. 5:6-15.

A minority of subsequent decisions in this court have applied *Yant* in a manner requiring a showing by plaintiff of some indicia of past or present discrimination in addition to a comparison with an employee of the opposite sex to establish an Equal Pay Act *prima facie* case.  *Compare Brooks*, 101 Fed. Cl. at 346 ("Defendant believes that this precedent [in *Yant*] supports its view that merely pointing to a single comparator is insufficient to satisfy plaintiff's prima facie case, particularly when, as here, there are other male employees who earn less than she. We disagree."), *and Martin*, 96 Fed. Cl. at 631 (focusing on a differential in pay for equal or substantially similar work), *with Branch*, 101 Fed. Cl. at 415 (stating that to establish an Equal Pay Act violation, plaintiff must prove "past or present discrimination based on sex") (quoting *Yant*, 588 F.3d at 1374).

arguing that the similarities between Mr. A's and plaintiff's roles substantially outweigh their differences.  However, there is a significant indication in the record that despite plaintiff's assertions and the fact that plaintiff and Mr. A had the same job title, the districts assigned to Mr. A were more difficult and challenging than those assigned to Ms. Jordan.  *See, e.g.,* Hr'g Tr. 12:14-22 (discussing the fact that Mr. A handled "harder districts that have higher turnover rates" and are "hard-to-fill districts" because of competitive conditions, resulting in more staffing difficulties), 13:6-9 (discussing plaintiff's service on details, which are generally less demanding); Johnson Decl. ¶ 15 ("In general, Ms. Jordan was responsible for a lighter workload than other H-band team members.").  Also, the additional tasks performed by Mr. A, to which he dedicated a substantial portion of his time, likely required more skill, effort, and responsibility than those performed by plaintiff.  Hr'g Tr. 13:10 to 14:24 (emphasizing Mr. A's responsibilities relating to drug testing), 21:5-25 (noting Mr. A's duty to review in-position increase requests), 22:1 to 24:9 (outlining Mr. A's responsibilities for reviewing positions under the FAIR Act and serving as the back-up for the centralized selection process); Def.'s Mot. at 30 (noting that Mr. A's I- and J-band level duties required him to "exercise discretion and perform analysis"); *see also Branch*, 101 Fed. Cl. at 414 ("[W]age differentials can be justified when employees perform an important differentiating task, even if they do not spend large amounts of time performing that task.") (internal citations omitted); *Martin*, 96 Fed. Cl. at 631 ("Application of the [E]qual [P]ay [Act] is not dependent on job classifications or titles but depends rather on actual job requirements and performance.") (quoting 29 CFR § 1620.13(e)).

Nonetheless, although the court is dubious that Ms. Jordan has fulfilled her burden of establishing that the work she has performed since December 16, 2011 is substantially equal to that performed by Mr. A, for purposes of analysis the court will assume that she has made out a *prima facie* case and turn to address the affirmative defenses put forward by the government.

## B.  The Government's Affirmative Defenses

The government asserts two affirmative statutory defenses to explain the pay discrepancy between Ms. Jordan and Mr. A: that the difference in pay was based upon a merit-based system

---

In addition, the standards of liability for an Equal Pay Act claim and a Title VII claim are sufficiently similar that "the failure to make out a prima facie case of gender based wage discrimination under Title VII also defeats a claim under the EPA." *Crowder v. Railcrew Xpress*, 557 Fed. Appx. 487, 494 (6th Cir. 2014); *see also Hutchins v. International Board of Teamsters*, 177 F.3d 1076, 1080 (8th Cir. 1999) ("The standard governing a claim of unequal pay for equal work is the same for Title VII and for the Equal Pay Act.").  But in *Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir. 1987), *abrogated on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the court observed that "[u]nlike the showing required under Title VII's disparate treatment theory, proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act." *See also Forsberg v. Pacific Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (requiring only that plaintiff demonstrate that "he or she did not receive equal pay for equal work" in establishing a *prima facie* case).
    Solely for purposes of analysis of Ms. Jordan's case, the court will assume that verifying a pay differential between employees of the opposite sex for performance of substantially equal work is sufficient for plaintiff to satisfy her burden of establishing a *prima facie* case.

and additional factors other than sex.  Def.'s Mot. at 34; *see also* Hr'g Tr. 40:6-11.  "To establish the merit-based system defense, defendant must demonstrate 'that a merit system was an organized and structured procedure by which employees were evaluated systematically and in accordance with predetermined criteria.'" *Brooks*, 101 Fed. Cl. at 346 (quoting *Raymond v. United States*, 31 Fed. Cl. 514, 518 (1994)).  Employees must be aware of the system, and it cannot be based upon sex.  *See id.* (citing *Equal Employment Opportunity Comm'n. v. Aetna Ins. Co.*, 616 F.2d 719, 725-26 (4th Cir. 1980)).  While a merit-based system may compensate employees according to the quantity and quality of their performance, it need not be devoid of subjectivity.  *See id.* (citing *Aetna*, 616 F.2d at 726).  To establish the "factor other than sex" defense, the factor must be both "gender-neutral on its face and bona fide – that is, used in good faith and not in a discriminatory manner – in its application."  *Behm v. United States*, 68 Fed. Cl. 395, 400 (2005) (citing *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989) ("The factor other than sex must also be bona fide.  In other words, an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith; it was not meant to provide a convenient escape from liability.") (in turn citing *Goodrich v. International Bhd. of Elec. Workers*, 712 F.2d 1488, 1493-94 n.11 (D.C. Cir. 1983))).  In its analysis, the Court should apply deferential, "rational basis" scrutiny and should not question the wisdom of a particular policy.  *Id.* at 401.

The government has adequately supported its affirmative defenses involving the FAA's compensation system, which takes into account both merit and factors other than sex.  First, the government has sufficiently demonstrated that while the FAA's "core compensation system" imposes strict pay bands on employees' base salaries based on their positions, employees' pay levels within those bands are largely determined by merit.  Every year, employees are eligible to receive individual, merit-based "superior contribution increases" amounting to 0.6% or 1.8%, and the FAA aims to award such increases to approximately two-thirds of its employees.  *See* A218-19 (HRPM Core Comp.-2.4C Annual Pay Changes (Mar. 12, 2002)).  Furthermore, upon promotion, employees are eligible for additional pay increases of up to 15% based on their performance.  *See* A222.  Rubrics and guidelines exist to aid supervisors in making their recommendations, *see, e.g.*, A232-33 (Promotion Increase Decision Tool), and Human Resources manuals and other periodicals ensure that information regarding the FAA core compensation system is available readily to FAA employees.  *See, e.g.*, A193-204 & A215-17 (Human Resources Policy Manual (Mar. 12, 2002)).

The government has also established that Ms. Jordan's comparatively lower salary within the H-band can be explained in part by her individual merit.  During her promotions in 2001, 2002, and 2003, plaintiff's supervisors awarded her increases of 8% in base pay, well below the 15% cap.  *See* Def.'s Mot. at 34.  In addition, plaintiff has not received a "superior contribution increase" since 2001, more than ten years before the filing of her complaint in 2013.  *See* A43.  Among other things, Ms. Jordan has not challenged her supervisor's decisions regarding her own receipt of promotional pay increases or superior contribution increases.  *See* A7-19 (Pl.'s Resps. to Gov't Interrog. Nos. 6 & 7).  Instead, she contests her supervisor's decision to allow Mr. A to maintain his higher base pay following his voluntary demotion.  *See* Pl.'s Opp'n at 23 ("Ms. Jordan does not challenge how her pay has been historically set, only that the FAA applied

16

its pay setting policies in a discriminatory manner when Ms. Johnson allowed [Mr. A] to retain his pay when he was demoted two whole pay bands."). Like the decisions regarding plaintiff's salary, however, the determination of Mr. A's pay can be explained by factors other than sex.

Mr. A was promoted to a J-band position in January 2011. *See* Def.'s Mot. at 7 (citing A49-50). At that time, the FAA's policy required that his pay be set within the J-band range, and it was established at the bottom of that range. When Mr. A was demoted, FAA policy allowed his supervisor to maintain his pay level so long as it fell within the H-band range. His supervisor used that permitted discretion to maintain his pay at the same level. In doing so, she provided reasons based on factors other than sex, including her expectation that Mr. A would continue to do higher-level work, her belief that Mr. A possessed skills and knowledge superior to employees in the H-band, and her intention to move him into an I-band position when one became available. *See* Def.'s Mot. at 37 (citing A136 & A147-50); *see also* Hr'g Tr. 18:1-10.[28] Each of these factors is unrelated to sex and explains Mr. A's comparatively higher base pay. In allowing Mr. A to retain his pay level, FAA regulations did not require Ms. Johnson to consider the relative value and pay of other employees, *see* Hr'g Tr. 42:19 to 43:3, although she took related factors into account. That Ms. Jordan may have disagreed with her supervisor's decision to retain Mr. A's base salary at its pre-demotion level is not in itself enough to defeat the government's defense. Moreover, it is also not enough that Ms. Johnson exercised discretion and applied a somewhat subjective judgment because a merit-based system need not, and likely cannot, be entirely devoid of some form of subjectivity. *See Brooks*, 101 Fed. Cl. at 346. Ms. Johnson provided logical, gender-neutral reasons for maintaining Mr. A's base pay, and plaintiff has put forth no evidence indicating that Ms. Johnson failed to act in good faith.

Therefore, even viewing the facts in the light most favorable to Ms. Jordan and assuming that she has made out a *prima facie* case, the government nonetheless prevails because the difference in pay is supported by factors other than sex, including a merit system, and Ms. Jordan has failed to raise any genuine issue of material fact to be resolved at trial.

---

[28]In general, salary retention policies qualify as a factor other than sex. *See, e.g.*, *Covington v. Southern Ill. Univ.*, 816 F.2d 317, 322 (7th Cir. 1987) ("We conclude that [defendant's] salary retention policy qualifies as a factor other than sex. We do not believe that the [Equal Pay Act] precludes an employer from implementing a policy aimed at improving employee morale when there is no evidence that that policy is either discriminatorily applied or has a discriminatory effect."); *Taylor v. White*, 321 F.3d 710, 719 (8th Cir. 2003) (same, applying *Covington*); *Kouba v. Allstate Ins. Co.*, 691 F.2d 873, 876-77 (9th Cir. 1982); *but see Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988) (noting that "prior salary alone cannot justify pay disparity," but observing that "the 'factor other than sex'" exception applies when "the disparity results from unique characteristics of the same job; from an individual's experience, training, or ability; or from special exigent circumstances connected with the business").

## CONCLUSION

For the reasons stated, the government's motion for partial dismissal is subsumed into its motion for summary judgment, and that motion is GRANTED.  The clerk shall enter judgment for the government and against plaintiff.

No costs.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge